IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEANNA NELSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 2:11-cv-01334-TFM |
| | ) |
| ALLAN'S WASTE WATER SERVICE, INC., | ) |
| JEFF HILLBERRY, | ) |
| ROBERT ALLAN SHIPMAN, and | ) |
| CAROLYN STEVENSON SHIPMAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION FOR SUMMARY JUDGMENT (ECF No. 49) filed by Defendants Allan's Waste Water Service, Inc. ("AWWS"), Robert Allan Shipman, and Carolyn Stevenson Shipman,[1] with brief in support and concise statement of material facts ("CSMF"). Plaintiff Deanna Nelson filed a brief in opposition and a responsive CSMF. The motion has been fully briefed and the factual record has been thoroughly developed. Accordingly, the motion is now ripe for disposition. For the reasons that follow, the Court will **DENY** the motion for summary judgment filed by Defendants.

I.   **RELEVANT HISTORY**

AWWS provided delivery and pickup service of portable toilets at industrial and commercial sites. Plaintiff, a female, was employed by AWWS as a truck driver and was responsible for delivery, pickup, and cleaning of those toilets. Plaintiff alleges that another truck driver, Defendant Jeff Hillberry, subjected her to sexual harassment, which created a hostile work environment. The harassment allegedly involved unwanted touching and vulgar language. Plaintiff states that she reported the purported conduct to various AWWS management personnel

---

[1] Defendant Jeff Hillberry did not file a motion for summary judgment.

1

including its owners, Defendants Robert Shipman and Carolyn Shipman. Plaintiff further claims that AWWS management failed to adequately address the matter and that the severity of her unceasing harassment eventually forced her to resign.

Specifically, Plaintiff alleges severe sexual harassment by a coworker, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("the PHRA"). In her 6-count amended complaint,[2] Plaintiff asserts that: (1) AWWS engaged in gender discrimination in violation of Title VII, (2) AWWS behaved in a retaliatory manner in violation of Title VII, (3) AWWS engaged in gender discrimination in violation of the PHRA, (4) Defendant Hillberry aided and abetted the discrimination in violation of the PHRA, (5) Defendants Robert Shipman and Carolyn Shipman also aided and abetted the discrimination in violation of the PHRA, and (6) Defendants Robert Shipman and Carolyn Shipman are jointly and severally liable in their individual capacities for the purported unlawful employment practices at AWWS, by piercing the corporate veil. On February 28, 2013, Defendants filed the instant motion for summary judgment on all counts.[3]

Defendants filed a CSMF which contained only three facts: (1) that Plaintiff brought topless photographs of herself and others to the work place, (2) that Plaintiff initiated sexual conduct by sharing those photos, sending sexually explicit text messages, and making sexually suggestive comments to male coworkers, and (3) that AWWS complied with its corporate formalities at all times. Plaintiff filed a responsive CSMF on April 5, 2013, in which she: (1) admits to having shown other AWWS employees a photograph of a topless woman who had

---

[2] The original complaint only included AWWS and Hillberry as defendants. On March 12, 2012, AWWS filed an answer to Plaintiff's complaint. Plaintiff amended her complaint on June 7, 2012, to include Robert Shipman and Carolyn Shipman as defendants.

[3] Defendants also filed their motion for judgment on the pleadings on February 28, 2013, which the Court will deny as moot as it is duplicative to the summary judgment motion.

participated in a "wet t-shirt contest" at a motorcycle rally known as "Mountainfest," but denies showing those employees inappropriate photos of herself, (2) denies actually initiating any inappropriate sexual conduct or behavior in the workplace, and (3) admits that AWWS complied with all corporate formalities. Plaintiff's CSMF added thirty-two additional facts—to which Defendants did not respond. Per Local Rule 56(E), Plaintiff's additional facts are deemed admitted by Defendants. Of particular relevance to the summary judgment motion, Plaintiff avers that she reported the alleged harassment to lead truck driver Jerry Galloway, supervisor Keith McClure, Defendant Robert Shipman, and Defendant Carolyn Shipman.

## II.   STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The nonmoving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Liberty Lobby*, 477 U.S. at 249). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the nonmoving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

**III.    LEGAL ANALYSIS**

   **A.    Employment Discrimination Claims (Counts I and III)**

Both Title VII and the PHRA prohibit employment discrimination based on an individual's sex, and generally apply the same legal standards. 42 U.S.C. 2000e-2(a); 43 P.S. §§ 951 *et seq*. In order to establish a prima facie case of gender discrimination, a plaintiff must show by a preponderance of the evidence that: (1) she is a member of a protected class, (2) she satisfactorily performed her job, (3) she suffered an adverse employment action, and (4) circumstances exist that give rise to an inference of unlawful discrimination, such as might occur when similarly situated nonmembers of the protected class were treated more favorably. *See Johnson v. McGraw-Hill Companies*, 451 F. Supp. 2d 681, 697 (W.D. Pa. 2006) (citing *Goodwin v. Bd. of Trustees of Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006); *Grande v. State Farm Mut. Auto. Ins. Co.*, 83 F. Supp. 2d 559, 562 (E.D. Pa. 2000)). Furthermore, a plaintiff who alleges discrimination based on hostile environment sexual harassment must establish an atmosphere or environment sufficiently severe or pervasive so as to alter her employment conditions and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *see Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993) (stating that "the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their . . . gender . . . offends Title VII's broad rule of workplace equality"). According to the United States Supreme Court, "[t]he gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor Sav. Bank, FSB*, 477 U.S. at 68 (citing 29 C.F.R. § 1604.11(a) (1985)). An objective standard applies in determining whether the conduct was severe or pervasive enough to create a hostile work environment. *See Harris*, 510 U.S. at 21-22. However, a subjective standard applies in determining whether the alleged

4

sexual advances were "unwelcome." *See id.*

It is readily apparent that a genuine issue of material fact exists with respect to that issue in this case. Specifically, there is a material disagreement as to whether the conduct of Plaintiff's coworkers was "unwelcome." Defendants do not contend that Defendant Hillberry's conduct did not constitute harassment; instead Defendants argue that such behavior was invited by Plaintiff's voluntary choice to show her coworkers a photograph of a topless woman. Despite admitting to some voluntary actions, Plaintiff claims that she did not consent to severe physical groping and repeated lewd remarks. The Supreme Court has acknowledged that "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact . . . ." *Meritor Sav. Bank, FSB*, 477 U.S. at 68. Obviously, any determination as to whether sexual behavior occurred, and was subjectively unwelcome, will require a finder of fact to consider the totality of the circumstances and evaluate the parties' credibility. Accordingly, Defendants are not entitled to summary judgment on Counts I and III.

### B.   Discriminatory Retaliation Claim (Count II)

In Count II, Plaintiff alleges that AWWS failed to address her repeated complaints of sexual harassment, and that such action (or non-action, rather) was undertaken with malice and/or reckless indifference to her federally protected rights. A plaintiff who alleges retaliation must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the employment action and exercise of the protected activity. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997); *Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir. 1995); *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994). A

constructive discharge constitutes an adverse employment action "in the sense that it is the legal equivalent to actual termination." *Price v. Delaware Dep't of Correction*, 40 F. Supp. 2d 544, 553 (D. Del. 1999) (citations omitted). A plaintiff who alleges constructive discharge as an adverse employment act must further establish that the abusive working environment became so intolerable given the totality of the circumstances that her resignation qualified as a fitting response. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 139 (2004) (citations omitted).

Here, Plaintiff claims that she was constructively discharged because of unbearable working conditions which AWWS failed to address. She reports losing all confidence that AWWS would take corrective action regarding Defendant Hillberry's actions. Indeed, on Plaintiff's last day at AWWS, Defendant Hillberry stated: "See, nothing happens to me. I can do what I want and get away with it. I'm not going to be the one losing my job." Defendants argue that Plaintiff did not suffer constructive discharge because her resignation was not a fitting response to the circumstances. Only a finder of fact may determine whether Plaintiff's working conditions were so unendurable that she was forced to leave the job. As such, genuine issues of material fact remain with respect to Plaintiff's claim of retaliation and Defendants are not entitled summary judgment on Count II.

      **C.**    **Affirmative Defense**

Where an employer takes no tangible employment action against an employee, as is the case in a constructive discharge, an employer may raise an affirmative defense to liability for sexual harassment. *See Suders*, 542 U.S. at 152. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid

harm otherwise." *Id.* at 137-38 (citations omitted) (internal quotations marks omitted).

Defendants invoke this defense by asserting that Plaintiff did not notify AWWS management staff of the purported harassment and quit before allowing them to take corrective action. On the contrary, Plaintiff states that she did, in fact, complain to supervisors on various occasions about the purported conduct for over a year. In her CSMF, Plaintiff claims that she reported Defendant Hillberry's actions to supervisor Keith McClure on occasion between December 2008 and February 2009. Plaintiff also states that she informed lead truck driver Jerry Galloway of the alleged conduct throughout the course of her employment. Further, Plaintiff asserts that, in September 2009, she notified Defendants Robert Shipman and Carolyn Shipman of the purported behavior. The conduct continued and Defendant Hillberry allegedly bragged about the lack of discipline from AWWS. On February 24, 2010, Plaintiff filed a charge with the Equal Employment Opportunity Commission and did not return to work.

At the summary judgment stage, the Court must resolve this dispute in the light most favorable to Plaintiff and deems her uncontroverted responsive CSMF admitted. Accordingly, Defendants have failed to establish an affirmative defense and are not entitled to summary judgment on Counts I or II.

D.     "Aiding and Abetting" Claims (Counts IV and V)

Unlike Title VII, the PHRA provides that it is unlawful for any person or employer "to aid, abet, incite, compel, or coerce" unlawful employment discrimination. 43 P.S. § 955(e). Individual "aiding and abetting liability" under the PHRA is limited to supervisors only. *See Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996). Although Pennsylvania law does not define the term "supervisor" under the PHRA, the Supreme Court has recently held "that an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is

empowered by the employer to take tangible employment actions against the victim . . ." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).

Applying that same principle to Plaintiff's PHRA claim in Count V, it is clear to the Court that Defendants Robert Shipman and Carolyn Shipman—as owners of AWWS—maintained supervisory control over Plaintiff. As noted above, there is a dispute of material fact with respect to whether Defendants Robert Shipman and Carolyn Shipman knew of the hostile work environment. Accordingly, the Court will deny summary judgment in regard to Count V, as Defendants Robert Shipman and Carolyn Shipman may be individually liable under the PHRA.

The Court will also deny the motion for summary judgment with respect to Count IV, which pertains only to Defendant Hillberry who did not file a motion summary judgment or respond to other such motions. Accordingly, the Court will not address *sua sponte* any concerns with regard to his alleged "aiding and abetting" and he remains a defendant in this case.

### E. "Piercing the Corporate Veil" (Count VI)

Plaintiff urges the Court to permit individual recovery against Defendants Robert Shipman and Carolyn Shipman. Defendants argue that no factual basis exists to pierce the corporate veil. Without citing any record evidence, Defendants state that "[t]he discovery record is replete with overwhelming documentation evidencing AWWS's compliance with corporate formalities at all times." Plaintiff contends that, although AWWS may have complied with all corporate formalities, the correct inquiry is whether its corporate form must be disregarded in order to prevent injustice.

Corporate veil piercing is an equitable remedy that need not be tried before a jury. *See Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*, 846 A.2d 1264, 1275 (Pa. Super.

8

Ct. 2004). Pennsylvania law features a strong presumption against the propriety of piercing the corporate veil. *See Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa.1995). Although there is no ironclad rule under Pennsylvania law as to when piercing is warranted, *see Good v. Holstein*, 787 A.2d 426, 430 (Pa. Super. Ct. 2001), the applicable standard has been articulated as follows: piercing is appropriate when the corporate form must be disregarded in order to "prevent fraud, illegality, ***or injustice***, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (quoting *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967)) (emphasis added). In determining the applicability of veil piercing, Pennsylvania law requires the Court to evaluate a multitude of factors which include (but are not limited to):

> the failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross under-capitalization.

*Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc.*, 758 F. Supp. 1054, 1059 (W.D. Pa. 1990) (citation omitted).

Importantly, Pennsylvania law requires that a veil piercing claim be supported by specific factual averments, rather than mere legal conclusions. *See Lumax*, 669 A.2d at 895. In *Lumax*, based on public policy, the Pennsylvania Supreme Court refused to permit a veil piercing claim to proceed where the complaint stated only conclusory allegations. *See id.* Rather, the pleader must state facts showing a reason to pierce the corporate veil.

In regard to Count VI, the Court concludes that Plaintiff states sufficient facts in her uncontroverted responsive CSMF by pointing to a stock purchase agreement by which AWWS sold its assets and ceased operations pursuant to a criminal plea agreement with the Commonwealth of Pennsylvania. The proceeds of that sale were acquired by Defendants Robert

Shipman and Carolyn Shipman. Plaintiff effectively reasons that "[e]quity does not permit a result where the AWWS and the Shipmans can commit crimes, receive proceeds of nearly $1 million from the sale of their company, and hold up an empty shell as the only employer against whom Plaintiff can recover." Defendants have failed to disprove veil piercing as a matter of law. Plaintiff's claim at Count VI survives summary judgment. The Court will take the issue of piercing the corporate veil under advisement pending further proceedings.

### IV. CONCLUSION

For the reasons hereinabove, the Court will **DENY** the MOTION FOR SUMMARY JUDGMENT (ECF No. 49) filed by Defendants. Furthermore, the Court will **DENY AS MOOT** the MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 47) as duplicative to the motion for summary judgment. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEANNA NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:11-cv-01334-TFM |
| | ) | |
| ALLAN'S WASTE WATER SERVICE, INC., | ) | |
| JEFF HILLBERRY, | ) | |
| ROBERT ALLAN SHIPMAN, and | ) | |
| CAROLYN STEVENSON SHIPMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

**AND NOW,** this 8th day of August, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that Defendants' MOTION FOR SUMMARY JUDGMENT (ECF No. 49) is **DENIED**. In addition, the MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 47) is **DENIED AS MOOT**.

On or before August 22, 2013, Plaintiff shall file her pretrial narrative statement. On or before September 5, 2013, Defendants shall file their pretrial narrative statements. A pretrial conference with the Court is scheduled on **Thursday, September 12, 2013 at 1:00 p.m.** in Courtroom 6C, United States Courthouse, 700 Grant Street, Pittsburgh, PA 15219.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

1

cc:	**Robert M. Owsiany, Esquire**
	Email: rmowsiany@rmolaw.com

	**Noah Geary, Esquire**
	Email: noahgeary@ngearylawoffices.net
	**Harry Cancelmi, Esquire**
	Email: hcancelmi@gmail.com