IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEANNA NELSON,<br>    Plaintiff,<br><br>    v<br>ALLAN'S WASTE WATER SERVICE, INC.,<br>JEFF HILLBERRY, ROBERT ALLAN<br>SHIPMAN & CAROLYN STEVENSON<br>SHIPMAN,<br>    Defendants. | )<br>)<br>)<br>)<br>) 2:11-cv-1334<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are DEFENDANTS' MOTION IN LIMINE # 1 (ECF No. 74), DEFENDANTS' MOTION IN LIMINE # 2 (ECF No. 75), and DEFENDANTS' MOTION IN LIMINE # 3 (ECF No. 76) filed by Allan's Waste Water Service, Inc. ("AWWS") and Robert Allan Shipman and Carolyn Stevenson Shipman. Plaintiff, Deanna Nelson, filed a response to each motion (ECF Nos. 77 and 78). Accordingly, the motions are ripe for disposition.

### I.  Background

This is an employment discrimination case involving claims of hostile work environment and retaliation against AWWS under Title VII and related claims under the Pennsylvania Human Relations Act ("PHRA") against AWWS and the individual Defendants, the Shipmans and AWWS employee Jeff Hillberry. Since Defendant AWWS has ceased operations, Plaintiff is also seeking to pierce the corporate veil and hold the company's sole shareholders, the Shipmans, personally liable under Title VII, a statute under which there is no individual liability. On August 8, 2013, the Court denied Defendants' motion for summary judgment and at the same time denied their motion for judgment on the pleadings as moot. The relevant factual background is fully set forth in the Court's opinion denying those motions and is incorporated herein by reference. *See* Mem. Opinion and Order, Aug. 8, 2013 (ECF No. 16). The case is

currently scheduled for a jury trial on January 21, 2014, on all of Plaintiff's claims. The Court will address Defendants' motions *seriatim*.

## II. Discussion

### A. Defendants' First Motion in Limine (ECF No. 74)

In their first motion, Defendants request that the Court deny Plaintiff's request to pierce the corporate veil, contending that Plaintiff has failed to establish that AWWS ignored corporate formalities and thus there is no basis to hold the Shipmans personally liable as the now-defunct company's shareholders. In response, Plaintiff argues that the observance of corporate formalities is but one of a myriad of factors the Court must consider when deciding whether the Plaintiff can pierce the corporate veil. Chief among those factors, according to Plaintiff, is the injustice that would result if "AWWS and the Shipmans can commit crimes, receive proceeds of nearly $1 million from the sale of their company, and hold up an empty shell as the only employer against whom Plaintiff can recover." Pl.'s Resp. to Def.'s Third Mot. in Lim. 3 (ECF No. 77).

Before addressing the merits of the parties' contentions, it is necessary to address the propriety of Defendants' motion in light of the procedural posture of this case. Plaintiff argues that Defendants are improperly attempting to take a second bite at the summary judgment apple by re-raising the corporate veil piercing issue at this juncture. The Court recognizes that the veil piercing issue was addressed at the summary judgment stage and that the Court permitted the claim to survive, albeit somewhat reluctantly. The Court's decision was based, in part, on Defendants' failure to present a well-reasoned argument in support of why AWWS's corporate veil should not be pierced. Indeed, their "argument" took up all of two sentences in their brief and failed to cite any authority. At the time, however, the Court also made clear it would "take

the issue of piercing the corporate veil under advisement pending further proceedings." Mem. Op. and Order of Court, Aug. 8, 2013 (ECF No. 66). The Court has considered the matter further, and the time has come to take up the issue anew.

On to the merits. There is a strong presumption against piercing the corporate veil, as doing so undermines the well-established rule that corporations enjoy a legal existence separate from their owners. *See Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). This presumption applies with equal force "even if [the corporation's] stock is owned entirely by one person." *Id.* However, veil piercing may be appropriate when it is necessary to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (quoting *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967)). Courts have expanded on that general principle by developing various tests to determine when veil piercing is warranted. The tests go by various titles: the "alter ego" theory, the "integration" doctrine, the "identity doctrine," to name just a few. *Id.* at 484 n.2. Plaintiff purports to proceed under the "alter ego" theory, but in practice "the formulations are generally similar, and courts rarely distinguish them."[1] *Id.* No matter the theory upon which Plaintiff is proceeding, a court must consider several factors in deciding whether to disregard the corporate form:

> the failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant

---

1. Plaintiff also purports to rely on the doctrine of successor liability. Insofar as Plaintiff believes that this doctrine can be used to hold individual shareholders liable for the debts of a corporation, she is wrong. Generally, when one corporation acquires substantially all of the assets of another company (which then ceases to exist as a going concern), the purchaser is not liable for the transferor's debts. The doctrine of successor liability, however, provides several scenarios in which the general rule of non-liability can be overcome. *See generally Fizzano Bros. Concrete Prods., Inc. v. XLN, Inc.*, 42 A.3d 951 (Pa. 2012). Plaintiff is not attempting to sue a successor corporation. Thus, the successor liability doctrine has no application in this case.

shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross under-capitalization.

*Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc.*, 758 F. Supp. 1054, 1059 (W.D. Pa. 1990) (citation omitted).

In this case, Plaintiff's veil-piercing argument is based entirely on the fact that AWWS was prosecuted for environmental crimes and forced to sell off its assets and cease operations as part of a plea agreement entered into with the Pennsylvania Attorney General's Office. Be that as it may, the fact that a corporation engaged in illegal activities, standing alone, does not provide a basis for piercing the corporate veil. *See McGovern v. Jack D's, Inc.*, No. 03–5547, 2004 WL 228667, at *2 (E.D. Pa. Feb. 3, 2004). The results of such a rule would be absurd, exposing innocent shareholders to a potential flood of liability when a corporation engages in misconduct entirely unrelated to the plaintiff's claim. On the contrary, "[t]he corporation itself must have been organized for the purpose of perpetrating the wrongs or shielding them when they occur." *Id.* In other words, there must be some relationship between the corporation; the fraudulent, illegal, or unjust conduct; and the Plaintiff's claim. Plaintiff has failed to establish the requisite connection, as she has not provided any evidence that AWWS was created for an illegal purpose or to shield the Shipmans' alleged involvement in wrongful conduct or that the illegality in which AWWS engaged in any way contributed to Plaintiff's alleged injury.

Similarly, even accepting Plaintiff's contention that it would be unjust to permit AWWS to be forced out of business and leave Plaintiff without a viable entity against which to recover alleged damages, that alone does not justify holding the Shipmans personally liable. The purported injustice must be accompanied by some of the other factors set forth above. The owners must have "ignored the separate status of the corporation and so dominated and

controlled its affairs that its separate existence was a mere sham." *School Dist. Of Scranton v. Fowler*, No. 98-CV-6134, 2000 WL 1205910, at *335 (Pa. Comm. Pl., Lackawanna Cnty. Apr. 17, 2000). Here, Plaintiff has not established any evidence which suggests that AWWS was operated as a sham or that the Shipmans ignored the corporation's separate status. In fact, Plaintiff has actually admitted that AWWS observed all corporate formalities. Pl.'s Resp. to Def.'s CSMF ¶ 3. Accordingly, Defendants' first motion in limine will be **GRANTED**. Plaintiff will not be permitted to advance the veil-piercing theory at trial.[2]

### B. Defendants' Second Motion in Limine (ECF No. 75)

Because the Court will not permit Plaintiff to pierce AWWS's corporate veil, any evidence related to that theory, specifically Exhibits 3-8 listed in Plaintiff's Pretrial Statement, will be excluded from trial. Plaintiff will also be precluded from making any reference to the state court criminal proceedings against AWWS and Allan Shipman, or the conduct that led to those proceedings, as such evidence is irrelevant to her employment discrimination claims. Defendants' second motion in limine will, therefore, be **GRANTED**.

### C. Defendants' Third Motion in Limine (ECF No. 76)

Next, Defendants argue that Plaintiff is collaterally estopped by the findings of the referee in her unemployment compensation ("UC") hearing from arguing at trial that (1) she informed the Shipmans of the alleged sexual harassment and (2) that she did not engage in

---

2. The Court notes that even though AWWS has ceased operations – it is unclear whether it is actually dissolved – Plaintiff is not left without any avenue of recovery. She still has a viable PHRA claim against the Shipmans individually. If Plaintiff proves that the Shipmans knew she was being subjected to discrimination and failed to take prompt remedial measures, they will be liable for the full extent of Plaintiff's recovery under the PHRA. Of course, as a prerequisite to doing so, the jury will first have to conclude that she was subjected to gender discrimination. *See Reganick v. Southwestern Veterans' Center*, No. 06–1267, 2008 WL 768423, *8 (W.D. Pa. March 20, 2008) (holding that plaintiff's §955(e) claim against the individual defendants failed because her discrimination and retaliation claims failed and thus there was no discrimination or retaliation for the individual defendants to aid and abet).

inappropriate sexual conduct while working at AWWS. The Court cannot agree. Contrary to Defendants' argument, it is well established that "unreviewed administrative agency findings can never be accorded issue preclusive effect in subsequent Title VII proceedings." *Roth v. Koppers Indus., Inc.*, 993 F.2d 1058, 1062 (3d Cir. 1993) (citing *Univ. of Tenn. v. Elliott,* 478 U.S. 788 (1976) and cases from four other courts of appeals holding the same). Since the UC referee's decision was not appealed to the Commonwealth Court, under *Roth* the decision cannot be given preclusive effect in this case. Additionally, even if Plaintiff had appealed, this Court would still not be bound by the referee's decision because under Pennsylvania law the doctrine of collateral estoppel no longer applies in the unemployment compensation context at all – no matter whether the decision is reviewed or unreviewed. *See Rue v. K–Mart Corp.*, 713 A.2d 82, 86-87 (Pa. 1998); *Francis v. Atlas Mach. & Welding, Inc.*, No. 11–6487, 2013 WL 592297, at *5 (E.D. Pa. Feb. 15, 2013); *Torres v. EAFCO, Inc.*, No. 00–2846, 2001 WL 41135, at *3 (E.D. Pa. Jan. 17, 2001). Accordingly, Defendants' third motion in limine will be **DENIED**. Plaintiff will be permitted to introduce testimony and evidence at trial purporting to demonstrate that she informed Defendants of the alleged harassment and that she never engaged in sexually suggestive conduct in the workplace.

That does not end the analysis, however. Although the UC referee's decision will not be given preclusive effect, it will nevertheless be admissible at trial. *See Barfield v. Orange Cnty.*, 911 F.2d 644, 650-51 & n.7 (11th Cir. 1990); *Long v. Valley Forge Military Acad. Found.*, No. 05-4454, 2008 WL 5157508, at *14 (E.D. Pa. Dec. 8, 2008); *Baldwin v. Rice*, 144 F.R.D. 102, 105 (E.D. Cal. 1992). The UC referee made a specific finding, based on Plaintiff's ***own admission*** at the hearing, that Plaintiff never informed AWWS of the alleged sexual harassment. *See* Referee's Decision/Order in the appeal of D. Nelson (ECF No. 76-1) ("In this case, the

6

claimant, by her own admission, did not approach either of the owners to discuss any concerns she had with the working conditions or of any harassment by other drivers."). The referee's finding goes to an issue central to each of Plaintiff's claims. If Plaintiff cannot prove that AWWS knew or should have known of the alleged harassment, her hostile work environment claim must fail. Likewise, if Plaintiff never notified AWWS of the harassment, Plaintiff could not prove that the allegedly retaliatory actions were taken in response to her complaints. The "aiding and abetting" claim against the Shipmans would also fail. As a result, the evidence is relevant and highly probative. While the jury should not be bound by that finding, it should be able to consider it and determine how much weight to give it, along with the other evidence in this case.

Furthermore, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or any of the other considerations set forth in Fed. R. Evid. 403. Such might have been the case if the UC referee had based her decision on a credibility finding or credited testimony from an AWWS witness over Plaintiff's testimony. In that instance, it could be argued that admitting the referee's decision would invade the province of the jury. But the UC referee did no such thing. Instead, her finding was based solely on Plaintiff testimony, and Plaintiff had every incentive at the hearing to testify truthfully since her claim to unemployment compensation benefits lay in the balance. The Court recognizes that Plaintiff believes that the referee's finding is an "erroneous characterization" of her testimony – she is free to explain why that is so on cross examination. Moreover, Plaintiff's counsel can attempt to explain away the import of the decision "by referring to deficiencies in the record or other evidence which discredits the administrative findings." *Baldwin*, 144 F.R.D. at 105.

### III. Conclusion

For the foregoing reasons, Defendants' first and second motions in limine will be **GRANTED** and Defendants' third motion in limine will be **DENIED**. An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DEANNA NELSON,<br>        Plaintiff,<br><br>        v<br>ALLAN'S WASTE WATER SERVICE, INC.,<br>JEFF HILLBERRY, ROBERT ALLAN<br>SHIPMAN & CAROLYN STEVENSON<br>SHIPMAN,<br>        Defendants. | )<br>)<br>)<br>)<br>) 2:11-cv-1334<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

**AND NOW,** this 10th day of January, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that:

1. DEFENDANTS' MOTION IN LIMINE # 1 (ECF No. 74) is **GRANTED**;

2. DEFENDANTS' MOTION IN LIMINE # 2 (ECF No. 75) is **GRANTED**; and

3. DEFENDANTS' MOTION IN LIMINE # 3 (ECF No. 76) is **DENIED**.


                                                                     BY THE COURT:

                                                                     s/Terrence F. McVerry
                                                                     United States District Judge


cc:    **Robert M. Owsiany, Esquire**
          Email: rmowsiany@rmolaw.com

          **Noah Geary, Esquire**
          Email: noahgeary@ngearylawoffices.net

          **Harry Cancelmi, Esquire**
          Email: hcancelmi@gmail.com